USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1641 MELINDA RYAN ARMACOST, Plaintiff, Appellee, v. AMICA MUTUAL INSURANCE COMPANY, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Thomas R. Bender, with whom David P. Whitman, and Hanson, Curran, ________________ ________________ ________________ Parks & Whitman were on brief for defendant-appellant. _______________ Mark S. Mandell, with whom Mandell, DeLuca & Schwartz, Ltd. were _______________ ________________________________ on brief for plaintiff-appellee. ____________________ December 10, 1993 ____________________ BOWNES, Senior Circuit Judge. The principal issue BOWNES, Senior Circuit Judge. ____________________ in this automobile accident diversity case is whether a Rhode Island statute requires that an insurer pay prejudgment interest over and above its policy limits to the plaintiff. We hold that the statute does so require. Some background facts are necessary. I. I. Plaintiff-appellee, Melinda Ryan Armacost, was a pedestrian in Newport, Rhode Island, when she was struck by an automobile owned and operated by Stephen B. Owen, a resident of New York. Owen was insured by defendant- appellant, Amica Mutual Insurance Company (Amica) of Providence, Rhode Island. A complaint was filed in the district court against Owen, but the summons was returned non ___ est inventus. Plaintiff promptly amended her complaint, ___ ________ naming Amica as defendant under Rhode Island's direct action statute.1 After discovery was completed, but prior to trial, Amica admitted negligence by its insured. The only issue for trial, therefore, was the amount of damages. ____________________ 1. The statute, R.I. Gen. Laws 27-7-2, provides in pertinent part: An injured party, or, in the event of that party's death, the party entitled to sue therefor, in his or her suit against the insured, shall not join the insurer as a defendant. If, however, the officer serving any process against the insured shall return that process "non est inventus," . . . the party . . . may proceed directly against the insurer. -2- 2 Shortly prior to the trial date, plaintiff's counsel made a written demand "equal to the coverage limits of $500,000" to settle the case. The demand specifically referred to the statute at issue, R.I. Gen. Laws 27-7-2.2. Amica rejected the demand and made a counter offer of $175,000. This was spurned by plaintiff. During the trial Amica again offered to settle for $175,000; the offer was again rejected. The jury returned a verdict of $750,000. The district court amended the judgment by reducing it to the amount of Amica's contractual liability under its policy $495,000.2 The district court then held that Amica was required under the statute to pay plaintiff prejudgment interest on the amended judgment, "even though such interest, when added to the amended judgment, requires Amica to pay an amount which exceeds the limits of its liability under the applicable insurance policy." Armacost v. Amica Mut. Ins. ________ ________________ Co., 821 F. Supp. 75, 82 (D.R.I. 1993). ___ II. II. The statute at issue has not been interpreted by the Rhode Island Supreme Court. The only court to have considered it is the United States District Court in the opinion from which this appeal has been taken. This means that we are called upon to decide how the Rhode Island ____________________ 2. The original policy limits of $500,000 had been reduced by $5,000 because of a payment in that amount to settle the claim of plaintiff's husband. -3- 3 Supreme Court would construe the statute in the context of this case. The standard of review of the district court's opinion is de novo. We do not accord deference to the __ ____ district court's determination of Rhode Island law. Salve _____ Regina College v. Russell, 499 U.S. 225, 231-35 (1991). ______________ _______ The statute to be construed provides: Interest on judgment Payment by Interest on judgment Payment by insurer. In any civil action in which insurer. the defendant is covered by liability insurance and in which the plaintiff makes a written offer to the defendant's insurer to settle the action in an amount equal to or less than the coverage limits on the liability policy in force at the time the action accrues and the offer is rejected by the defendant's insurer then the defendant's insurer shall be liable for all interest due on the judgment entered by the court even if the payment of the judgment and interest thereon totals a sum in excess of the policy coverage limitation. This written offer shall be presumed to have been rejected if the insurer does not respond within a period of thirty (30) days. R.I. Gen. Laws 27-7-2.2. Rhode Island's prejudgment interest statute provides: Interest in civil action. In any Interest in civil action. civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of twelve per cent (12%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein. This section shall not apply until entry of judgment or to any contractual -4- 4 obligation where interest is already provided or as to any condemnation action. Id. 9-21-10. ___ The question is whether the prejudgment interest statute, 9-21-10, applies to the rejected-settlement-offer statute, 27-7-2.2. Ordinarily, we would certify to a state supreme court a question of first impression involving the interpretation of a state statute. In this case, however, the language of the implicated statutes, the evident purpose of the statutes, and the case law are so clear that we think certification would be a waste of judicial resources. Amica raises two issues: whether the Rhode Island Supreme Court would construe 27-7-2.2 as not applicable to direct action suits against insurers; and whether the Rhode Island Supreme Court would limit the interest due on cases arising under 27-7-2.2 to that accruing after judgment. A. The Applicability of 27-7-2.2 to the Direct Action A. The Applicability of 27-7-2.2 to the Direct Action ____________________________________________________ Statute Statute _______ Amica's argument on the first issue runs as follows. The starting point is that statutes granting interest on judgment must be strictly construed because they are in derogation of the common law. So construed, 27-7- 2.2 applies only to actions "in which the defendant is covered by liability insurance." Amica therefore contends that, because it is an insurer, and not, in the words of the statute, "a defendant covered by liability insurance," it -5- 5 does not come within the compass of the statute. It argues that the phrase "written offer to the defendant's insurer" is directed at the situation where the decision to settle is not within the control of the defendant, but lies with defendant's insurer. The purpose of the statute, Amica concludes, is to protect a defendant who is insured from interest liability in excess of the policy limits due to a decision made by the insurer. This is an ingenious argument; it uses the strict construction doctrine to avoid the plain meaning of the statute. But it ignores the legal fact that the action against the insurer is a derivative action. Amica was the insurer of defendant Owen. The complaint was originally brought against Owen. Amica was made a defendant under the direct action statute, 27-7-2, because its insured could not be served with process. Amica stands in Owen's shoes. It is both defendant and insurer. This case started out, in the words of 27-7-2.2, as a "civil action in which the defendant is covered by liability insurance." If process had been served on Owen, Amica's handling of the case would have been no different, and it would be making the same argument as to prejudgment interest because in either case it would have to pay the amount found due. We see no basis in logic or common sense for the argument that 27-7-2.2 is not applicable to the insurer under the direct action statute. -6- 6 -7- 7 B. Construing the Statute B. Construing the Statute ______________________ Amica makes a number of arguments attacking the district court's construction of the statute. The overarching argument is that the district court did not apply the rules of statutory construction that would have been applied by the Rhode Island Supreme Court and, as a result, improperly construed the statute. Because our review is de __ novo without any deference to the district court, we do not ____ think it necessary to discuss point-by-point defendant's attack on the district court opinion. The only question is whether the ultimate conclusion of the district court should be affirmed. We are not concerned with the route taken by the court in reaching its result. We start our analysis with a determination of the purpose of the rejected-settlement-offer statute, 27-7-2.2. Although the construction of this statute is one of first impression, the purpose of the prejudgment interest statute, 9-21-10, has been articulated by the Rhode Island Supreme Court. In Martin v. Lumberman's Mutual Casualty, 559 A.2d ______ ____________________________ 1028 (R.I. 1989), the Rhode Island Supreme Court held that the prejudgment interest did not apply to condemnation cases. In the course of its opinion it stated: Statutes that award prejudgment interest generally serve the dual purposes of encouraging the early settlement of claims, Pray v. Narragansett Improvement ____ ________________________ Co., 434 A.2d 923, 930 (R.I. 1981), and ___ compensating plaintiffs for waiting for -8- 8 recompense to which they were legally entitled, Dennis v. Rhode Island Hosp. ______ ___________________ Trust Nat'l Bank, 744 F.2d 893, 901 (1st ________________ Cir. 1984). Martin, 559 A.2d at 1031; see also Isserlis v. Director of ______ ___ ____ ________ ___________ Public Works, 300 A.2d 273, 274 (R.I. 1973) (clear purpose of ____________ such legislation was to accelerate settlement of tort cases). We have echoed this finding of settlement purpose. Roy v. ___ Star Chopper Co., 584 F.2d 1124, 1135 (1st Cir. 1978) ("The ________________ Rhode Island prejudgment statute was enacted to promote the expeditious settlement of claims."). We think it plain from its terms that the rejected- settlement-offer statute has the same purpose as the prejudgment interest statute to accelerate the settlement of tort cases. This purpose is readily apparent from its provision that if the plaintiff's offer of settlement is rejected by the defendant's insurer then the defendant's insurer shall be liable for all interest due on the judgment entered by the court even if the payment of the judgment and interest thereon totals a sum in excess of the policy coverage limitation. 27-7-2.2. This language tells the insurer in no uncertain terms that it runs the risk of paying a stiff price for shrugging off an offer of settlement. We next turn to the wording of the two implicated statutes. The prejudgment interest statute says: "In any ___ civil action in which a verdict is rendered or a decision is -9- 9 made for pecuniary damages," interest shall be added to the amount of damages from the date the cause of action accrued. 9-21-10. It is beyond cavil that this case was a civil action, that plaintiff's offer of settlement was for an amount "equal to . . . the coverage limits in the liability policy in force at the time the action accrue[d], and the offer was rejected by the insurer." 27-7-2.2. It is manifest that the prejudgment interest statute applies directly to the case at bar. It also seems evident to us that, by its very words, 27-7-2.2 requires the payment of prejudgment interest. It says that if the plaintiff's offer is rejected "then the defendant's insurer shall be liable for all ___ interest due on the judgment entered by the court even if the payment of the judgment and interest thereon totals a sum in excess of the policy coverage limitation." (Emphasis added.) Despite the labored argument of defendants to the contrary, it seems obvious that "all interest" can only mean prejudgment and postjudgment interest. And this is the only interpretation that makes sense if the purpose of the statute is to promote settlement, as is obvious. There would be no pressure on the insurer to consider a settlement offer if all it had to pay for rejecting the offer was post-judgment interest. Defendant's suggested construction of the statute would take all of the bite out of it. -10- 10 We think the following statement by the Rhode Island Supreme Court applies to the statute in issue: In the face of a statute so clear and unambiguous there is no room for the application of the usual canons of statutory construction. In such a case the statute declares itself. Vezina v. ______ Bodreau, 86 R.I. 87, 133 A.2d 753; Long _______ ____ v. Langlois, R.I., 170 A.2d 618. We may ________ not where no ambiguity exists search beyond the statute for a different meaning. Hathaway v. Hathaway, 52 R.I. ________ ________ 39, 156 A. 800. Even hardship does not justify a court in reading into a statute something contrary to its unequivocal language. Clark v. Orabona, 1 Cir., 59 _____ _______ F.2d 187. Only when the legislature sounds an uncertain trumpet may the court move in to clarify the call. But when the call is clear and certain as it is here we may not consider whether the statute as written comports with our ideas of justice, expediency or sound public policy. In such circumstances that is not the court's business. Blais _____ v. Franklin, 31 R.I. 95, 77 A. 172. ________ Kastal v. Hickory House, Inc., 187 A.2d 262, 264-65 (R.I. ______ ____________________ 1963). Out of an abundance of caution we have examined similar statutes in other jurisdictions because we think the Rhode Island Supreme Court might possibly have done so. Of the more than thirty states surveyed, many have prejudgment interest statutes accompanied by rejected-settlement-offer provisions, or separate statutes that are invoked in tandem to expedite claims settlement. See, e.g., Cal. Civ. Code ___ ____ 3291 (West Supp. 1993); Conn. Gen. Stat. 52-192a(b); Minn. Stat. Ann. 549.09(c) (West Supp. 1993); Mo. Ann. Stat. -11- 11 408.040.2 (Vernon 1990); Ohio Rev. Code Ann. 1343.03(c) (Anderson Supp. 1993). Our survey has not disclosed a single instance where prejudgment interest has been held not to apply to a rejected- settlement-offer statute. Given the rejected-settlement-offer statute's plain language and the Rhode Island courts' long history of applying the prejudgment interest statute in tort cases, we think the Rhode Island Supreme Court would apply its prejudgment interest statute to the rejected-settlement-offer statute. Affirmed. Costs on appeal awarded to appellee. Affirmed. Costs on appeal awarded to appellee. _________ ____________________________________ -12- 12