**CARDI CORPORATION**

v.

**STATE of Rhode Island.**

**No. 88–275–Appeal.**

Supreme Court of Rhode Island.

July 6, 1989.

Edward L. Maggiacomo, John F. Bomster, Robert D. Wieck, Adler Pollock & Sheehan, Inc., Providence, for plaintiff.

James E. O'Neil, Atty. Gen., Richard B. Woolley, Asst. Atty. Gen., Providence, for defendant.

**OPINION**

KELLEHER, Justice.

This appeal is but another chapter in a long-standing dispute between the Cardi Corporation (Cardi) and the Rhode Island Department of Transportation (DOT).

This controversy arose as a result of a number of contracts entered into by DOT and Cardi. Cardi, a general contractor, entered into a series of multi-million-dollar federal-aid projects involving the construc-

tion of highways and bridges. Cardi claimed that as a result of various acts by the DOT respecting those contracts, it incurred costs and expenses for which it was not paid. *Cardi Corp. v. State*, 524 A.2d 1092, 1093 (R.I.1987).

In May 1980 the General Assembly passed an act (the act) that waived the state's sovereign immunity and allowed Cardi to sue the state. The act, 80–H–7574, limited any damage award to Cardi to an amount not in excess of $1,250,000 but omitted any reference to the granting of interest. In April 1981 Cardi filed suit against the state. Subsequently the 1980 legislation was amended, in 1984, when the Legislature increased the potential award limit available to Cardi to $3 million and expressly provided for the award of interest.

On September 23, 1985, Cardi filed an amended motion for a partial summary judgment. On December 11, 1985, an order was entered in the Superior Court granting Cardi's motion, and Cardi was awarded $3,204,564 in damages. The award, however, failed to mention any grant of interest. On December 19, 1985, the state filed a notice of appeal. In preparing its appeal, the state became aware that the December 11 order did not qualify as a final judgment because neither party had obtained a certificate from the motion justice pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure indicating that there was no reason for further delay. Eventually the state filed a motion for entry of final judgment, *nunc pro tunc*, with the Superior Court. The motion was granted in late July 1986 with an order that specifically directed the final judgment be entered *nunc pro tunc*. However, for some unknown reason a final judgment was never entered by the clerk of the court.

Prior to the grant of the July 30 order, the General Assembly, at its 1986 session, had once again amended the 1980 legislation by increasing the potential award to $5 million. The 1986 amendment, 86–H–7961, was made applicable to "any judgment heretofore entered in favor of Cardi Corpo-

ration" and raised the limit on the amount awardable to Cardi while also declaring that "in no event shall the judgment including interest and costs be in excess of * * * ($5,000,000)."

On April 15, 1987, this court denied and dismissed the state's appeal, affirmed the December 11, 1985 $3,204,564 judgment, and remanded the case to the Superior Court for further proceedings. *Cardi Corp.*, 524 A.2d at 1099.

In May 1987 Cardi filed a motion for entry of final judgment *nunc pro tunc*. Cardi proposed that the judgment award should include prejudgment interest in the amount of $3,853,361.47. A series of hearings on Cardi's motion were held before the presiding justice of the Superior Court. In late December 1987 Cardi filed a motion for the assessment of postjudgment interest.

On January 13, 1988, an order was entered by the Superior Court. The order specified that (1) prejudgment interest was to accrue from May 9, 1980, the date of the passage of the act waiving state immunity, until December 11, 1985, the entry date of the Superior Court grant of a partial summary judgment; (2) the aggregate amount of principal and prejudgment-interest award was not to exceed $5 million; (3) judgment was partially satisfied by the payment of $3,204,564 the state made to Cardi in May 1987; and (4) Cardi was to receive $1,795,436 for interest, representing the difference between the damage award and the $5 million limit. However, in late January 1988 Cardi filed a motion to vacate the January 13 order on the grounds that the calculation of prejudgment interest did not comport with our holding in *Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's, Inc.*, 494 A.2d 897 (R.I. 1985). Consequently in early February 1988 the Superior Court entered an order granting Cardi's motion. The order specified that (1) prejudgment interest was to accrue from May 9, 1980, the date of the passage of 80–H–7574, until April 15, 1987, the date on which this court affirmed the December 11, 1985 order granting summary judgment, resulting in prejudgment interest amounting to $2,666,560.30; (2) post-

judgment interest was to accrue commencing on April 15, 1987; (3) the aggregate amount of principal, prejudgment interest, and postjudgment interest was not to exceed $5 million; (4) judgment had been partially satisfied by the state's earlier payment to Cardi; (5) the state was to pay Cardi an additional interest payment of $1,795,436; and (6) the clerk of the court was directed to enter final judgment. Such judgment was entered on February 1, 1988.

The state appealed the February 1988 judgment. Subsequently, in early March 1988, the state paid Cardi $1,795,436 for interest.

A number of issues are raised in this appeal. The state argues that Cardi was entitled to neither prejudgment nor postjudgment interest. As an alternative, the state further contends that even if Cardi is entitled to prejudgment interest, the amount is limited by the terms of the act to a lesser sum than was granted. Cardi takes issue with the state's contentions and argues that prejudgment interest should accrue from the date of the contracts' completion and that postjudgment interest should not be limited by the $5 million cap.

The state bases its argument that Cardi is not entitled to prejudgment interest on the contention that the December 11, 1985 order granting partial summary judgment was a final judgment. The state notes that Cardi had not claimed any interest award in that proceeding and that none was granted and argues that Cardi did not act within time limits set by rules of procedure for filing a motion to amend the judgment to include interest. The state also argues that Cardi's May 1987 motion for final judgment was filed too late to amend the December 1985 order to allow Cardi to collect interest in addition to damages.

Cardi denies that the December 1985 order constituted a final judgment. Cardi notes that the original order did not comply with Rule 54(b) requirements for finality and that the judgment of July 30, 1986, "finalizing" the order was merely rendered and not properly entered to qualify as a final judgment. Cardi contends that the earliest final judgment was that of February 1, 1988, when the Superior Court's judgment was properly entered. Cardi argues that its motions for awards of interest were entered well before that final judgment and were therefore timely and that thus the interest awards were not precluded by rules of procedure.

■ None of these contentions actually targets the interest issue. Awards of prejudgment interest are provided for by G.L. 1956 (1985 Reenactment) § 9–21–10. That section provides in pertinent part:

"In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein. This section shall not apply until *entry* of judgment or to any contractual obligation where interest is already provided or as to any condemnation action." (Emphasis added.)

The statute explicitly provides that interest will be calculated only upon "entry" of a judgment, not its mere rendering, nor upon the entry of an order. Consequently neither the order of December 11, 1985, nor the July 30, 1986 order can be classified as the entry of a final judgment. Therefore, prejudgment interest would have been calculated up to a different date.

This court has held that "the term 'judgment' referred to in § 9–21–10 contemplates a final judgment, one that finally adjudicates the rights of the parties, whether it is a judgment from which no appeal is taken or a judgment that is affirmed by this court after consideration and rejection of the appellant's contentions." *Welsh Manufacturing, Division of Textron, Inc.,* 494 A.2d at 898. In *Welsh* the plaintiff had been awarded damages and 8–percent interest by the Superior Court. The defendant appealed to this court. While the appeal was pending, § 9–21–10 was amended to allow interest at a 12–percent rate. Subsequently on March 9, 1984, this court dismissed the defendant's appeal, affirmed the Superior Court award, and remanded

the case back to the Superior Court. *Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's, Inc.,* 474 A.2d 436 (R.I.1984). The plaintiff then filed to have the interest award raised to 12 percent, which motion was granted, and an order was entered. The defendant appealed this decision to this court. This court held that its March 9, 1984 decision constituted a final judgment under § 9–21–10. *Welsh,* 494 A.2d at 897–98.

Likewise, this court's 1987 affirmation of the partial summary judgment constitutes the requisite final judgment for § 9–21–10. *See Cardi Corp. v. State,* 524 A.2d 1092 (R.I.1987). Thus, prejudgment interest was determinable and awardable as of April 15, 1987, the date of this court's affirmation of the award for damages.

■ Contrary to the state's argument, whether Cardi specifically requested the interest by motion and whether an interest award was substantively adjudicated are not relevant for the awarding of prejudgment interest pursuant to § 9–21–10. This court has long held that the awarding of such interest is a ministerial act for the clerk of the court, not an issue to be decided by the court. *See, e.g., DiMeo v. Philbin,* 502 A.2d 825, 826 (R.I.1986); *Paola v. Commercial Union Assurance Companies,* 461 A.2d 935, 937 (R.I.1983); *Kastal v. Hickory House, Inc.,* 95 R.I. 366, 369, 187 A.2d 262, 264 (1963). Under § 9–21–10 once the claim for damages has been "duly reduced to judgment the addition of interest is peremptory." *Kastal,* 95 R.I. at 369, 187 A.2d at 264. Thus, under § 9–21–10, prejudgment interest was properly and automatically awarded to Cardi upon entry of this court's judgment on April 15, 1987. *See Paola,* 461 A.2d at 937.

■ The state further argues that even if Cardi had not lost its right to claim prejudgment interest, it was nonetheless not entitled to receive any. The state notes that the June 1986 amendment to the 1980 legislation retroactively applied the $5 million-award limit to "any judgment heretofore entered in favor of Cardi Corporation." The state contends that December 11, 1985, was the date of final judgment for Cardi's damage award, and the amended award limit did not take effect until that date. The state also argues that since the total award limit prior to December 11, 1985, was a mere $3 million, Cardi could not collect prejudgment interest accrued prior to that date that, in aggregate with damages, exceeded $3 million. The state further argues that since the $3 million limit was exceeded by the damage award alone, Cardi is not entitled to any prejudgment-interest award.

The state's argument is meritless because of its dependency on the December 11, 1985 order being a final judgment. Since April 15, 1987, more properly qualifies as the date of the pertinent final judgment, a date well after the second amendment to the act, then the full $5 million limit was in effect at, and prior to, the time of judgment. Since the damage award alone did not exceed this limit, Cardi was not precluded from receiving prejudgment-interest payments.

■ This leaves the issue of when prejudgment interest began to accrue for Cardi. The language of § 9–21–10 specifies that interest shall be calculated from "the date the cause of action accrued." The state argues that the prejudgment-interest accrual could not begin until the effective date of the 1984 amendment to 80–H–7574. The trial justice apparently construed the accrual date to be May 9, 1980, the date when the General Assembly first waived sovereign immunity to allow Cardi to sue. Cardi contends that the trial court erred in the state's favor on this issue. Cardi maintains that the causes of action began to accrue when the damages actually occurred. Cardi contends that since this error was in the state's favor, it provides no grounds for relief for the state on appeal.

Contrary to the litigants' arguments, we cannot fault the trial justice's determination. Numerous courts have held that a cause of action does not begin to accrue until an injured party has a right to seek relief in court. *See, e.g., Konecny v. United States,* 388 F.2d 59, 65 (8th Cir.1967); *Great American Insurance Co. v. Louis Lesser Enterprises, Inc.,* 353 F.2d 997,

1001 (8th Cir.1965); *New York Times Co. v. Conner,* 291 F.2d 492, 495 (5th Cir.1961); *Bellamy v. United States,* 448 F.Supp. 790, 793 (S.D. Tex.1978); *Keller v. Graphic Systems of Akron, Inc., Employees Profit-sharing Plan,* 422 F.Supp. 1005, 1008 (N.D. Ohio 1976); *Kenny v. Peregoy,* 196 Md. 630, 640, 78 A.2d 173, 176–77 (1951); *Loyal Order of Moose, Lodge 1785 v. Cavaness,* 563 P.2d 143, 146 (Okl.1977); *Haslund v. City of Seattle,* 86 Wash.2d 607, 619, 547 P.2d 1221, 1229 (1976); *Jadofsky v. Iowa Kemper Insurance Co.,* 120 Wis.2d 494, 499, 355 N.W.2d 550, 553 (Wis. Ct.App. 1984). Until such time as the General Assembly waived the state's sovereign immunity, Cardi did not have a right to sue the state, despite its damages. *See Calhoun v. City of Providence,* 120 R.I. 619, 390 A.2d 350 (1978). *See also Cardi Corp. v. State,* 524 A.2d at 1093. Furthermore, Cardi's right to sue was not dependent on its right to seek interest on any damages it might collect. Therefore, it was not error for the trial judge to determine that interest would begin to accrue on May 9, 1980, the first date Cardi was entitled to seek judicial relief.

■ The remaining question is whether Cardi is entitled to receive postjudgment interest. Both litigants argue that the Superior Court judge erred in granting Cardi postjudgment interest subject to the $5 million limit.

The most recent amendment to the act enabling Cardi to sue, 86–H–7961, provided that if Cardi was deemed to have suffered damages, then "the court shall award to and render judgment for * * * Cardi * * * in such sum as the court shall find to be just and equitable but in no event shall the *judgment including interest* and costs be in excess of five million dollars ($5,000,-000)." (Emphasis added.) Thus, the resolution of this issue depends on whether postjudgment interest is "included" in the judgment.

If postjudgment interest is included in the judgment, then it is authorized by the act but its amount is limited by the $5 million cap. However, the state contends that postjudgment interest is not included in the judgment since it does not come into being until after a judgment is given. The state reasons that postjudgment interest is therefore not authorized by the act and may not be awarded. Cardi agrees that postjudgment interest is not included in the judgment so that it is not subject to the $5 million cap but is nonetheless independently authorized by § 9–21–8 as an inherent right to any damage award.

Postjudgment interest is statutorily provided for by § 9–21–8. That section provides that "[e]very judgment for money shall draw interest at the rate of twelve percent (12%) per annum to the time of its discharge." This section contains no conditions regarding its applicability.

This state's prejudgment-interest statute, § 9–21–10, contains similar language of applicability. Because of that language, § 9–21–10 was deemed as automatically applying to any judgment for pecuniary damages. *See Paola,* 461 A.2d at 937. Likewise then, the right to collect postjudgment interest under § 9–21–8 also automatically applies to any judgment for damages, even if the actual final amount of the interest cannot be calculated at the time of judgment. Thus, the right to collect postjudgment interest is "included" in judgments for damages.

Since postjudgment interest is included in the judgment, the trial justice was correct in granting Cardi such interest pursuant to the terms of the 1980 act as it was amended in 1986. Furthermore, since the amount of interest due Cardi is specifically limited by the $5 million cap, it was not error to limit Cardi's post-judgment-interest award, in aggregate with prejudgment interest and the various damage awards, up to the $5 million cap.

Since the trial justice did not err in granting Cardi prejudgment interest and postjudgment interest, the state's appeal is denied and dismissed and the judgment appealed from is affirmed.